W. O. CHERRY V. FARMERS ROYALTY HOLDING. CO., ET AL.

No. 7785. Decided March 11, 1942.
Rehearing overruled April 15, 1942.
(160 S. W., 2d Series, 908.)

*Rose & Sample,* of Edna, for plaintiff in error.

The Court of Civil Appeals erred in holding that the judgment entered in the case of William Kemper against the defendants in this case which divested defendants of all the rights, titles and interests held by them in said land and vested it in Kemper, did not operate to cut off from defendants or their predecessors the right of reinvesture of title in them of half the minerals in said land upon the re-acquisition of the title of said land by Dan Webel, the warrantor of the title to the mineral interests. Houston Oil Co. v. Village Mills Co., 123 Texas 253, 71 S. W. (2d) 1087; Wood v. Gulf Production Co. 100 S. W. (2d) 412; Hale v. Hollon, 90 Texas 427.

*John T. Vance,* of Edna, *Dudley, Hyde, Duvall & Dudley* and *Ramsey Tower,* of Oklahoma City, Okla., and *Scurry & Scurry,* of Dallas, for defendants in error.

Where a grantor, who does not have a good title to land or minerals, conveys the same by warranty deed, and subsequently acquires good title, free from any encumbrances, the later title inures at once by contract of warranty, and by operation of law, to his warrantee in the deed, who has a good title against the original warrantor, and all persons in privity against him. Miller v. Miller, 283 S. W. 1085; Huling v. Moore, 194 S. W. 188; Edwards v. Riverside Royalties Corp., 99 S. W. (2d) 418; Lambrechy v. Lewis, 240 S. W. 988.

*Linebaugh & Guittard,* of Victoria, filed brief as amicus curiae.

MR. JUDGE HICKMAN delivered the opinion of the Commission of Appeals, Section A.

This is a trespass to try title suit instituted by W. O. Cherry against Farmers Royalty Holding Company and others, the property in dispute being an undivided one-half interest in the minerals in a certain tract of land in Jackson County. The case was tried without a jury and judgment rendered for the plaintiff. That judgment was reversed and the cause remanded by the Court of Civil Appeals. 142 S. W. (2d) 255. Cherry alone applied for a writ of error.

The defendants claim title to one-half the minerals under warranty deeds executed by Dan Webel. The validity of their claim rests upon the rule that a title subsequently acquired to land by a vendor who has previously conveyed same under a warranty of title passed eo instante to the vendee, and the principal question here for decision is whether or not that rule is applicable under the facts of this case, and particularly as against Cherry, who had no actual knowledge of the prior warranties when he acquired his title.

The essential facts are as follows: The common source of title is F. H. Knipling. By deed dated September 25, 1918, and duly recorded Knipling and wife conveyed the land in controversy to Dan Webel, retaining a vendor's lien to secure the payment of certain purchase money notes described in the deed. Thereafter Knipling duly transferred and assigned certain of the notes which had not been paid and the vendor's lien and superior title retained by him to William Kemper. Thereafter, Webel and wife executed deeds with covenants of general

warranty to certain mineral interests in the land, the aggregate of which is an undivided one-half interest in such minerals, and defendants in this suit are the vendees and sub-vendees under said deeds. Thereafter, Webel and wife instituted a suit in the district court in the form of trespass to try title against the parties who are defendants in this suit, in which it was sought to have said mineral deeds cancelled. That suit, upon the motion of the defendants therein, was removed to the Federal Court. Thereafter, while such suit was still pending in the Federal Court, William Kemper, to whom, as above noted, had been transferred a portion of the purchase money notes and the superior title retained by Knipling to secure same, filed suit in the State court in the form of an action in trespass to try title, naming as defendants therein Webel and wife and his warrantees, who are the defendants in this suit and was awarded judgment therein for the title and possession of the land. The defendants were duly cited in that case and filed a joint answer therein consisting of a general demurrer, general denial and plea of not guilty. Webel and wife filed no answer. It does not appear that any of the defendants in that suit sought any adjudication of rights as between themselves. Webel and wife did not follow up their suit which was transferred to the Federal Court and same was dismissed for want of prosecution.

After Kemper acquired title to the land through the judgment above mentioned, he, joined by his wife, conveyed all of the land back to Dan Webel, the consideration for conveyance being $1,550.00, evidenced by vendor's lien notes executed by Webel and payable to the order of Kemper. Thereafter, Webel and wife conveyed the land by deed with covenants of general warranty to plaintiff in error, Cherry, the consideration for such conveyance being $3,600.00 in cash and one vendor's lien note for $400.00. A portion of the cash consideration was used to pay off and discharge the notes owing by Webel to Kemper.

■ The Court of Civil Appeals held that when Kemper conveyed the land back to Webel the mineral interests which the latter had theretofore conveyed to the defendants by deeds containing covenants of general warranty passed eo instante to the defendants. By such holding it applied the familiar rule known as the doctrine of after-acquired title as established and announced by many decisions of this court. Baldwin v. Root, 90 Texas 546, 40 S. W. 3; Caswell v. Llano Oil Co., 120 Texas 139, 36 S. W. (2d) 208. Other cases are cited in 14 Tex. Jur.,

pp. 899 et seq., Sec. 123. The contention is made that that rule has no application under the facts of this case for the reason that the judgment in the case of Kemper v. Webel et al divested all of the rights, title and interests of each of the defendants in the instant suit in and to the land or any part thereof out of them and vested same in Kemper, and that the effect thereof was necessarily to divest them of the right later to acquire these mineral interests under the doctrine of after-acquired title. We cannot agree with this contention.

The only material difference between the instant case and the case of Caswell v. Llano Oil Co., supra, relative to the question under review lies in the fact that in the Caswell case title was divested out of the warrantor and warrantee through a foreclosure sale under the powers contained in a deed of trust executed as further security for the vendor's lien notes, while in this case divestiture was accomplished by means of a judgment in an action of trespass to try title. No reason is perceived for attaching different consequences to the two methods of divestiture. The material fact is that the title of the warrantees has failed. Kerr v. Erickson (Com. App.) 24 S. W. (2d) 21; Miller-Vidor Lumber Co. v. Schreiber, 298 S. W. 154 (wr. ref.).

The judgment in the case of Kemper against Webel and his warrantees did not adjudicate the rights of the warrantees in any title subsequently acquired by Webel. They were not called upon in that suit to assert any cause of action against Webel, for they had no cause of action at that time to assert. The law decreed what their rights would be in the event Webel should thereafter acquire title to the property, and a recital in the judgment in that case that they would possess such rights in such an event would have served no purpose whatever. It would have neither added to nor detracted from their rights.

The governing rule is well stated in Freeman on Judgments, 5th Ed., Vol. 2, Sec. 714, as follows:

"Whenever title is put in issue and adjudicated, the judgment is res judicata upon this issue in any subsequent action. The effect of such an adjudication must, however, be limited to the title or right as it then stood. It is obviously not conclusive as to title and rights subsequently acquired. * * * So where a party plaintiff claiming title through his predecessor

under a warranty deed, fails because of the invalidity of a deed to his predecessor, the subsequent acquirement of title by the latter inures to the plaintiff's benefit by virtue of the warranty and may be the basis of a new action by him."

In the case of Bird v. Cross, 123 Tenn. 419, 131 S. W. 974, the Supreme Court of Tennessee in disposing of the contention here presented under facts somewhat similar to those before us quoted with approval this language from one of its own prior decisions in Gore v. Gore, 101 Tenn. 620, 49 S. W. 737:

" 'The question then presented is: Is she precluded from setting up this after-acquired title by the result of the former litigation? If so, then we will have this anomalous condition: That complaint was defeated in the former suit because she had no title, and is to be defeated now, by reasons of the decree in that cause, when she presents, upon the averments of her bill, admitted to be true by demurrer, a paramount legal title, acquired by her since the termination of that cause.

" 'We are aware of no case that would stand as authority for such a result. On the contrary, the rule is that a party will not be prejudiced by a judgment as to rights not then accrued.' "

■ The argument is made that the doctrine of after-acquired title does not apply in this case, because the property was the homestead of Webel and wife. We are not impressed by this argument. There is no restriction against the sale by the husband and wife of the homestead or any part thereof. The deeds through which defendants procured their mineral interests in the land were executed by both Webel and wife, and whatever homestead rights they had in such interests came to an end upon the delivery of such deeds. When the property was later deeded back to the Webels by Kemper they did not reinvest those interests with the homestead character, for same passed eo instante to the defendants.

Cherry takes the position that he is entitled to be protected as an innocent purchaser. He had no actual knowledge of the deeds from Webel to the defendants, and it is his view that he should not be charged with constructive notice thereof because they are not in his chain of title. It is familiar law that a purchaser is charged with notice of all recorded instruments in his chain of title or connected therewith, and with the legal effect thereof. Leonard v. Binfold Lumber Co., 110 Texas 83,

216 S. W. 382; Strong v. Strong, 128 Texas 470, 98 S. W. (2d) 346, 109 A. L. R. 739.

In tracing the title from Knipling, the common source, to Cherry, it will be disclosed that one branch of that title came through these defendants. By the assignment of the vendor's lien and superior title from Knipling to Kemper, the latter did not acquire a full title to the property. Webel and his warrantees, the defendants, had an inferior title thereto and that title passed to Kemper through the judgment in the trespass to try title suit instituted by him against Webel and the defendants. That is in part the title under which Cherry claims. He is not, therefore, entitled to protection as an innocent purchaser, but is charged with the legal effect of the mineral deed.

Our holding on this question does not conflict with the holdings in such cases as Breen v. Morehead, 104 Texas 254, 136 S. W. 1047, Ann. Cas. 1914A, 1285, and Williams v. Cook (Com. App.), 282 S. W. 574. In Breen v. Morehead it was held that a purchaser need not look beyond the origin of the title under which he purchases, and Williams v. Cook followed that holding. In each of those cases the origin of the title was held to be in the application to purchase the land from the State which resulted in the purchase thereof, and it was held that a subsequent purchaser was not charged with notice of deeds' executed by the original purchaser from the State prior to the date of such application to purchase. In this case the mineral deeds from Webel to the defendants were not executed prior to the origin of the title under which Cherry claims, but, on the contrary, they are in that chain of title, as pointed out above.

■ In the trial court judgment was rendered in favor of Cherry. The Court of Civil Appeals reversed that judgment, its holdings on the questions above decided being the same as those announced by us. However, that court did not render judgment for the defendants in error, but remanded the cause to the trial court upon the theory that the contention "abundantly appears in this case" that the mineral deeds from Webel to the defendants were fraudulently obtained, and that, if they were so obtained, the warranties should not be enforced. We have discovered no evidence in this case of any fraud in the procurement of such deeds, but we are not authorized to disturb the judgment of the Court of Civil Appeals in so far as it remanded this cause for the reason that defendants in error

did not file a motion for rehearing in the Court of Civil Appeals and did not prosecute any writ of error to this court. They now call upon us to reverse the judgment of that court in so far as it remanded the cause and render judgment in their favor, but it is well settled that our jurisdiction has not been invoked to grant them that relief. Maddox v. Clark, 107 Texas 212, 175 S. W. 1053; Cain v. Bonner, 108 Texas 399, 194 S. W. 1098, 3 A. L. R. 874; Harmon et al v. Overton Refining Co., 130 Texas 365, 110 S. W. (2d) 555; Plemons Independent School Dist. v. Stinnett Independent School Dist., (Com. App.) 59 S. W. (2d) 812; Howard v. Commonwealth Building & Loan Ass'n, 127 Texas 365, 94 S. W. (2d) 144; Vanover v. Henwood, Trustee, 136 Texas 348, 150 S. W. (2d) 785.

We express no opinion on the question of the right of Cherry upon another trial to prove fraud in the transactions between Webel and the defendants for that question is not before us, and, besides, we do not know what defenses will be set up to such theory by the defendants.

The judgment of the Court of Civil Appeals, which reverses the judgment of the trial court and remands the cause, is affirmed.

Opinion adopted by the Supreme Court March 11, 1942.

Rehearing overruled April 15, 1942.