CHARLES KULOW ET AL v. FARMERS ROYALTY HOLDING COMPANY ET AL.

No. A-559. Decided October 31, 1945.
Rehearing overruled November 28, 1945.
(190 S. W., 2d Series, 60.)

W. I. Hill, of Bellville, for Charles Kulow, *Dan Moody,* of Austin, and *W. H. Whilden* and *Vernon Elledge,* of Houston, for Shell Oil Company, all petitioners.

All rights held by plaintiffs under the mineral deeds were merged into the judgment in the federal court and it was therefore the sole source of their rights. Thereafter the parties were tenants in common and the Court of Civil Appeals erred in not so holding. Corn v. Texas Joint Stock Land Bank, 131 S. W. (2d) 752; Roach v. Grant, 134 Texas 10, 130 S. W. (2d) 1019; Vaughan v. Kiesling, 150 S. W. (2d) 435.

*Hollis Massey,* of Columbus, for respondent.

The compromise agreement in the federal court did not by implication relieve Kulow and wife of their obligations under

the covenants of warranty contained in their mineral deeds.
Flaniken v. Neal, 67 Texas 629, 4 S. W. 212; 12 Texas Jur., 23;
26 Tex. Jur. 117.

MR. JUSTICE SIMPSON delivered the opinion of the Court.

Charles Kulow acquired 251 acres of land in Austin County,
Texas, in 1915, by a deed in. which the vendor's lien was re-
tained to secure an unpaid portion of the purchase money. By
two deeds dated December 12, 1931, Kulow, joined by his wife,
conveyed three-eighths of the minerals in this land to Farmers
Royalty Holding Company and one-eighth of the minerals to
G. T. Blankenship. The latter subsequently conveyed to Farm-
ers Mutual Royalty Syndicate, Inc. These deeds purported to
convey what may be termed perpetual and fully participating
mineral and royalty interests and contained covenants of gen-
eral warranty.

In 1934, Kulow and his wife filed suit in the district court
of Austin County seeking, besides damages, cancellation of these
deeds upon allegations that they were fraudulently procured and
that the acknowledgments were fatally defective. The suit was
removed to the United States District Court for the Southern
District of Texas, where the Holding Company and the Royalty
Syndicate denied the averments respecting fraud and defective
acknowledgments and the Holding Company by a cross bill
sought damages for an alleged clouding of its title. The suit was
settled. The decree carrying the settlement into effect provided
(1) that the minerals in controversy be "vested in fee simple,
together with all rights pertinent or appendant," three-fourths
in Kulow and wife, one-eighth in the Royalty Syndicate and one-
eighth in the Holding Company; (2) that the claims of the re-
spective parties for damages be "dismissed with prejudice"; and
(3) that certain certificates of stock ownership held by the Ku-
lows in the Holding Company be cancelled.

The original purchase money obligation created when Kulow
bought the land in 1915 was not paid. This debt and the support-
ing lien were acquired by Herman Buchtien, who sued the Ku-
lows and the two royalty companies in the district court of
Austin County, where on January 6, 1937, he obtained judg-
ment against the Kulows for his debt and against all defendants
for foreclosure of his lien. Buchtien bought in the land at the
ensuing shereiff's sale, and on April 17, 1937, conveyed it back
to Kulow for a recited cash consideration.

Subsequently, in 1943, the Holding Company, the Royal

Syndicate and another filed a trespass to try title suit in the district court of Austin County against Charles Kulow and others seeking recovery of one-half of the minerals in this 251-acre farm. The trial court peremptorily instructed the jury to find for the defendants. The Court of Civil Appeals, Associate Justice Graves dissenting, reversed the judgment of the trial court and rendered judgment for the plaintiffs below, to the extent of investing in them and an intervenor who stood in privity of estate with them an aggregate of one-fourth of the minerals in the land. 186 S. W. (2d) 318.

Except for such effect as the federal court judgment may have had on the relations of the parties, the situation is almost precisely what it was in Cherry v. Farmers Royalty Holding Company, 138 Texas 576, 160 S. W. (2d) 908. And if the rule in the Cherry case, which is indeed a well-settled one, be applied, title acquired by Kulow in 1937 will inure by estoppel to the benefit of his prior grantees and make good the estates conveyed by the 1931 mineral deeds to the extent that these interests were confirmed by the agreement and judgment in the federal court suit. Caswell v. Llano Oil Co., 120 Texas 139, 36 S. W. (2d) 208. So we are led to inquire, what bearing did that judgment have on the relation of the parties?

■ We conclude the federal court judgment's terms demonstrate clearly that the original mineral deeds were left unimpaired save only that the aggregate fractional interest passing by them was reduced from one-half to one-fourth. The judgment decrees unequivocally that the fee simple title to certain mineral interests "together with all rights pertinent or appendant," be vested in the royalty companies. These "pertinent" and "appendant" rights certainly included, among other things, that incident of ownership by which such grantees as those in the 1931 mineral deeds might invoke the benefit of the doctrine of after-acquired title. The parties to the federal court suit had by appropriate pleadings joined issue on whether these deeds should be cancelled. They were not cancelled by the decree but on the other hand, one-half of the total estates passing under them, coupled with all incidents of ownership, was confirmed. The deeds necessarily survived the judgment and now retain their full vigor as originally written and delivered except that the aggregate fractional interest passing under them has been reduced. The Kulows "distinctly put in issue" the validity of the mineral deeds under consideration by seeking their cancellation. Having agreed to a judgment which left the deeds uncancelled and which, by express language, preserved to the Kulows' adversaries all rights "pertinent" or "appendant" to the grants contained in the

deeds, they are bound by the adjudication and cannot now question that the conveyances are valid and fully operative, except only, of course, that they pass a lesser interest than they originally did. Davis v. First National Bank of Waco, 139 Texas 36, 161 S. W. (2d) 467, 144 A. L. R. 1. So instantly upon the reacquisition of title by Kulow in 1937, one-eighth of the minerals vested in fee simple in Farmers Royalty Holding Company and a like interest in Farmers Mutual Royalty Syndicate, Inc., Cherry v. Farmers Royalty Holding Company, supra; Caswell v. Llano Oil Co., supra.

■ The doctrine of merger cannot aid the Kulows, as they urge. It is not applicable here. Under the doctrine, it may be stated quite generally that a cause of action which is reduced to judgment is merged into the decree. II Freeman on Judgments (5th ed.) page 1165, sec. 546 et seq.; 34 Corpus Juris 752 et seq. In the federal court suit neither the Kulows nor the royalty companies put in issue the right of the royalty companies to rely upon the doctrine of after-acquired title. This cause of action was not in any sense involved in that suit. Accordingly, it could not possibly have merged into the judgment.

We conclude the Court of Civil Appeals correctly applied the doctrine of after-acquired title to the rights of the parties and that its judgment should be affirmed.

*Opinion delivered October 31, 1945.*

*Rehearing overruled November 28, 1945.*